DENIKE *v.* UNITED STATES (No. 1356).[1]

MERCHANDISE MADE OF DUTIABLE AND NONDUTIABLE ARTICLES.

These wheels and axles of American manufacture, with tires made in Germany, were shipped into Mexico to have certain alterations made there and were then returned to the United States. The goods were not dutiable as entireties. The wheels and axles should have been admitted free under paragraph 500, tariff act of 1909, as articles the growth, produce, or manufacture of the United States. The tires, made in Germany, were dutiable at 1¼ cents per pound.

## United States Court of Customs Appeals, June 1, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34555 (T. D. 34090).

[Reversed.]

*C. W. Wickersham* (*Charles E. Hughes, jr.*, of counsel) for appellant.

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, of counsel; *Frank L. Lawrence*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Three sets of engine wheels, carrying their tires and mounted on axles, were sent by the Texas-Mexican Railway for repairs to the shops of the National Railways of Mexico, at Nuevo Laredo, Mexico. The wheels and axles were of American manufacture, but the tires were made in Germany, and after importation into this country were fitted to the American wheels. At Nuevo Laredo, Mexico, the tires while still on the wheels, were turned, and as a result of the turning the sharpness of the flange and certain flat spots on the tread were removed. No work was done on the wheels or axles. The cost of turning the tires was $15, and was charged by the Texas-Mexican Railway Co. to engine account. Whether the $15 charged was Mexican or American money does not appear from the record, but we assume it was Mexican money, inasmuch as the work was done in Mexico at the shops of the National Railways of Mexico. After the repairs were made, the wheels, tires, and axles, fitted together, were returned to Laredo, Tex., where they were entered as "3 pairs driving wheels on axles, value $132, free, repairs in Nuevo Laredo shops, value $9; rate of duty 45 per cent," presumably the rate imposed on articles of metal by paragraph 199 of the tariff act of 1909. The duty assessed on the importation by the collector of customs at Laredo was $4.05, which amount was paid by the importer on January 4, 1913. Seven days later the collector of customs reliquidated the entry and exacted a duty of $258.58 on the wheels, tires, and axles as entireties under the provisions of paragraph 171 of the tariff act of 1909, which, in so far as pertinent, reads as follows:

171. Wheels for railway purposes, or parts thereof, made of iron or steel, and steel-tired wheels for railway purposes, whether wholly or partly finished, and iron or steel

---

[1] Reported in T. D. 34553 (26 Treas. Dec., 1008).

locomotive, car, or other railway tires or parts thereof, wholly or partly manufactured, one and one-fourth cents per pound;   *   *   *   : *Provided*, That when wheels for railway purposes, or parts thereof, of iron or steel, are imported with iron or steel axles fitted in them, the wheels and axles together shall be dutiable at the same rate as is provided for the wheels when imported separately.

The importer protested that the importation was entitled to entry free of duties "other than the charges of labor for turning." The Board of General Appraisers overruled the protest and the importer appealed.

By paragraph 500 of the tariff act of 1909 Congress clearly indicated its intention that articles the growth, produce, or manufacture of the United States should be entitled to free entry when returned after having been exported without having been advanced in value or improved in condition by any process of manufacture or other means. This intention was given additional emphasis in the proviso to the paragraph, under which it would seem that exported goods manufactured in the United States of imported materials and materials of American origin may be reimported upon payment of duties equal to the drawbacks allowed at the time of exportation on the imported materials used in the original manufacture.

Having in mind the purpose of Congress to favor goods the growth, produce, or manufacture of the United States, we think that merchandise imported into the country made up in part of American goods entitled to free entry and in part of goods not entitled to free entry should not be assessed for duty as entireties if the components of the importation are in fact distinct articles and so distinguished one from the other that their several dutiable quantities, weights, measures, or values may be correctly ascertained. From the evidence in the case, which is undisputed, it appears that axles, wheels, and tires are made by different factories and are not only readily separable one from the other, but are as a matter of fact frequently separated either to make repairs or to substitute a new axle, wheel, or tire. As the weight of the German tire might have been readily ascertained and the American wheel and axle had not been at all advanced in value or improved in condition, duty should have been assessed on the weight of the tire and not the weight of the wheel and axle. This conclusion is supported by the principle laid down in the case of Hillhouse *v.* United States (152 Fed., 163), in which it was held that an automobile entitled to free entry when exported from the United States was not dutiable as *an entirety* on reentry by reason of new parts added while abroad and that the additions only were subject to duty. The Government contends that Hillhouse *v.* United States was distinguished in United States *v.* Auto Import Co. (168 Fed., 242), by Judge Lacombe, who announced the opinion of the court in both cases. Judge Lacombe did distinguish the two cases and did say in the Auto Import Co. case that it would be an unreasonable extension of the proposition

in the Hillhouse case "to hold that importations dutiable at some particular rate as completed articles may be constructively separated for duty purposes into parts subject to different classifications." Judge Lacombe did not say, however, that an importation made up in part of dutiable articles of foreign origin and in part of nondutiable articles of American origin was dutiable as an entirety, and the language used by him went no farther, in our opinion, than to indicate that the doctrine of Hillhouse v. United States could not in any event be extended to completed articles, all the constituents of which were dutiable.

The protest in this case was very inartificially drawn and failed to state that the turning was done on the tire. The protest, however, was directed to the turning, and from the importation itself it was evident to the collector that the work was done on the tire. The entry of the importer claimed free entry for three pairs of driving wheels on axles. The statement in the protest that duties should only have been assessed on the value of the labor was too broad a claim of exemption. Nevertheless, it sufficiently challenged the attention of the collector to the claim of exemption, as appears from his return, in which he states:

> These were foreign tires and from examination I feel sure that they are new Krupp tires, although the other parts of the wheels and axles are American manufacture.

From this it seems apparent that the collector recognized that the issue between himself and the importer was whether the wheels, axle, and tires should be assessed as an entirety or classified separately and assessed accordingly. In our opinion, the wheels and axles should have been admitted free and duty assessed on the tires at the rate of 1¼ cents per pound.

The decision of the Board of General Appraisers is *reversed*.