(C. D. 1308)

DONALD G. PARROT v. UNITED STATES

## United States Customs Court, Third Division

(Decided March 6, 1951)

*Joseph F. Lockett*; *Walter E. Doherty, Jr.*, associate counsel, for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., dissenting

JOHNSON, Judge: The controversy in this case involves the importation of a 55-foot auxiliary schooner yacht named "Keewatin" which arrived at the port of Bar Harbor, Maine, under its own power from Newfoundland. At the trial counsel for the plaintiff submitted this action upon the protest and all the papers in the jacket.

The *pro forma* invoice on customs Form 138 describes the article and the value thereof, as follows:

| | |
|---|---|
| 55 foot aux. schooner yacht Keewatin_____ | $17, 000 |
| less American goods returned_____ | 4, 267 |
| | $12, 733 |

On said *pro forma* invoice there appear the imprints of a rubber stamp with the words "VALUES APPROVED, APPRAISER" with the red-pencil initials "JMM" above the word "APPRAISER."

More detailed information of the items totaling the amount of $4,267 is contained in invoices and certificates of value and origin, required for shipments to Newfoundland, dated at Boston, Mass., on January 30, 1947, March 17, 1947, and May 20, 1947, supplied by the firm of Jas. Bliss & Co., Inc., of Boston, covering various articles entitled "Marine Hardware." These articles were shipped to the plaintiff herein, Donald G. Parrot, at Clarenville and St. John's, Newfoundland. The total values of each of these invoices of fittings were listed at $2,142.62 (*sic* $1,942.62), $600.81, and $153.37, respectively. A similar invoice and certificates of value and origin, dated at Boston, February 3, 1947, covered canvas sails, valued at $600, shipped to the plaintiff at Clarenville, Newfoundland, by Cooney Sail Co., Inc., of Gloucester, Mass. Jas. Bliss & Co., Inc., also sold hardware to the plaintiff, valued at $70. The total of these invoices of American goods is $3,566.80. As there is a mistake in addition on the first invoice of $200, the actual total is $3,366.80. There also is with the papers, an invoice of returned American goods and declaration of foreign exporter on customs Form 129, which not only discloses the value of the parts and fittings, amounting to $3,566.80, but also a Chrysler crown marine engine, valued at $900, and a direction finder, valued at $200, total $4,666.80. A deduction of $200 for the error on invoice, written in red ink, appeared thereon, reducing the

total to $4,466.80. Also deducted was the value of items of American goods "having lost their identity" amounting to $221.78. These items appear on the invoices as paint, $150.78; caulking cottons, $35; and seam composition, $36, total $221.78. The total value of the goods, admitted as American goods returned, which had not lost their identity, was officially returned by the appraiser as $4,245.02.

The report of Appraising Officer Cleaves, on customs Form 6431, discloses the following facts:

| DATE OF PURCHASE | QUANTITY INVOICED | STATE PRICE—UNIT OF QUANTITY AS— | | | RATE AND PARAGRAPH AS— | | |
|---|---|---|---|---|---|---|---|
| | | Invoiced | Entered | Appraised | Entered | Sender's opinion | Reply |
| 6/23/47 | ONE | $12,773.4267. | $12,773.4267. | $12,773.4267. | 370 15% 1615 FREE | 370 30% 1615 FREE | TD 49752 p. 370 CM 16.2b Equipment if of American mfrer f. o. o. p. 1615-a See T. D. 45320/4 See remarks |

The "reply" appearing on the foregoing report was typewritten in red. At the bottom thereof appear the notations in red "NY, 7/18/47 (Examiner) Smith (Assistant appraiser) Becker." On the reverse side of the report under the caption "Additional Remarks" there appears in black typewriting the following:

Importer went to Nfld. and hired workmen and bought material and built the yacht with use of the items shipped from the USA. Actually not acquired by purchase. Entered Par 370 15% per Canadian Trade agreement. Importer claims he was assured by Collector of Customs, Boston, and by American Consul, St. Johns, Nfld. before he built the yacht that the 15% rate would apply. It now appears that the yacht comes under TD 49753 as motorboats, etc. from Newfoundland and the rate is 30%.

In red typewriting immediately below is the following notation:

No record. T. D. 49753 (British Trade Agreement) does not apply. Motor boats are not enumerated therein. From your report of "appraised value" the boat is apparently valued at more than $15000 each and hence, 30% p. 370 would apply.

The entry discloses that the article was entered at $12,733 at the rate of 15 per centum and duty was deposited in the sum of $1,909.95; that the accessories of American production were entered at $4,267 free of duty and that such value was lowered to $4,245, and the dutiable value increased to $12,755. The collector, however, increased the rate to 30 per centum, thus increasing the duty in the amount of $1,916.55, or to the sum of $3,826.50.

Counsel for the plaintiff claims in his brief that the appraiser valued the yacht at $12,755 and the American goods returned thereon at $4,245, and, as no appeal was filed by the collector against such return of valuation, it must stand as the value of the merchandise. It

is further claimed that when liquidating the entry, although the collector accepted the value returned by the appraiser as $12,755, and the returned American goods at $4,245, when determining the rate of duty to be assessed on the importation, he added to the *"per se"* value of the yacht, the value of the American goods, $4,245, thus increasing the total value of the yacht to $17,000. The rate was then determined to be 30 per centum under paragraph 370 as "Motor boats" which "includes a yacht." Therefore, the yacht, which he concluded was valued at more than $15,000, could not be allowed the lower rate of 15 per centum ad valorem, as provided in the trade agreement between the United States and Canada, T. D. 49752, reading:

Motorboats, including yachts or pleasure boats, whether sail, steam, or motor propelled, valued at not more than $15,000 each, 15% ad val.

Counsel for the plaintiff contends that the collector, in applying the rate to $12,755 to obtain the amount of duty to be assessed, disregarded the value of the American goods. That is to say, the 30 per centum duty was not assessed against the $4,245. It is argued, therefore, if the ad valorem rate is not to be applied to the $4,245, the portion admitted to free entry, that the collector should have considered only the value of the yacht *"per se,"* in determining the rate, rather than the combined values of the American goods and the so-called *"per se"* value of the yacht. In effect, the plaintiff claims that the rate and amount of duty should be determined on the same value, to wit, the so-called value of the yacht, sans American goods.

It is further contended by counsel for the plaintiff that the yacht in its completed state, including the identifiable American goods returned, should not be treated as an entirety for any purpose, citing *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, T. D. 34553; *Hillhouse* v. *United States*, 152 Fed. 163, T. D. 27831.

Counsel for the plaintiff points out in his brief that section 503 (a), Tariff Act of 1930, provides that *"the basis for the assessment of duties* on imported merchandise subject to ad valorem rates of duty *shall be the entered value or the final appraised value, whichever is higher,"* [italics supplied] and that for purposes of determining the rate of duty, the final appraised value shall be taken to be the value of the merchandise. Counsel stresses that, according to the wording of section 503 (a), in order to determine whether the 15 per centum or the 30 per centum rate applied, the collector should have used for the basis of his determination "the final appraised value of the yacht *per se*, or $12,755," and since such value is less than $15,000, the 15 per centum rate is applicable.

Counsel for the Government, on the other hand, contends that the importation consists of one 55-foot auxiliary schooner yacht "Keewatin," which arrived at the port of Bar Harbor, Maine, under its

own power, and that this yacht was invoiced at a value of $17,000, complete; that the American goods forming part of said yacht were not shown to be separate and distinct items of commerce in their imported condition but were returned as an integral part of the yacht, and such was the intention when such articles were exported to Newfoundland from the United States; and, further, that the American goods were intended to, and actually did, enhance the value of the yacht. Therefore, as only one entity was imported, and goods are subject to appraisement in their condition as imported, the yacht is valued at $17,000, and such was the value as returned by the appraiser. In support of its contention, the Government cites *United States* v. *Irwin et al.*, 78 Fed. 799; *Park & Tilford* v. *United States*, 1 Ct. Cust. Appls. 34, T. D. 31006; *United States* v. *N. S. Meyer, Inc.*, 18 C. C. P. A. 201, T. D. 44381; *D. Salemi & Sons* v. *United States*, 19 C. C. P. A. 43, T. D. 44892; *United States* v. *H. K. Miyaka*, 22 C. C. P. A. 38, T. D. 47039; *Yardley & Co., Ltd.* v. *United States*, 22 C. C. P. A. 390, T. D. 47400.

The Government further contends that the collector, in assessing duty upon the foreign goods and admitting the American goods without the payment of duty under paragraph 1615 (a), *infra*, followed the case of *Hillhouse* v. *United States*, 152 Fed. 163, relied upon by the plaintiff.

Section 503 of the Tariff Act of 1930, in force and applicable at the date of importation of said yacht, reads in part as follows:

(a) * * * Except as provided in section 562 of this Act (relating to withdrawal from manipulating warehouses) and in subdivision (b) of this section, *the basis for the assessment of duties* on imported merchandise subject to ad valorem rates of duty *shall be the entered value or the final appraised value, whichever is higher.*

\* \* \* \* \* \* \*

(c) * * * *For the purpose of determining the rate of duty to be assessed upon any merchandise when the rate is based upon or regulated in any manner by the value of the merchandise, the final appraised value shall* (except as provided in section 562 of this Act) *be taken to be the value of the merchandise.* [Italics not quoted.]

Paragraph 370 of the Tariff Act of 1930, under which the yacht in question was assessed, provides as follows:

* * * motor boats, and parts of the foregoing, 30 per centum ad valorem. The term "motor boat," when used in this Act, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, * * *.

Under the trade agreement between the United States and Canada, T. D. 49752, effective January 1, 1939, the foregoing paragraph was modified to read as follows:

Motorboats, including yachts or pleasure boats, whether sail, steam, or motor propelled, valued at not more than $15,000 each, 15% ad val.

Paragraph 1615 (a) in the free list of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, so far as applicable, provides as follows:

Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

This court finds no merit in plaintiff's claim. Congress in its wisdom saw fit to exempt from duty certain dutiable merchandise that conformed to the conditions of entry of American goods returned to the United States after having been previously exported. That fact is no reason to assume that such goods should attain a status different from like goods of foreign manufacture in that they should not be regarded as an entirety with such foreign goods for purposes of ascertaining the rate of duty applicable to the dutiable portion thereof. The statute provides that the basis for the assessment of duty is the entered value or the final appraised value, whichever is higher. The final appraised value is $12,755 for the dutiable portion and $4,245 for the free portion. The American goods were entered without the payment of duty, which is in accordance with law. That does not mean that the value of the American goods should be disregarded. In fact, the appraiser found that the value was $4,245, whereas the goods claimed to be exempt from duty amounted to $4,466.80. However, the appraiser was unable to identify the origin of certain paint and caulking materials amounting to $221.78. Being unable to identify such items directly as American goods, the value was made a part of the portion of the yacht that was not of American production. The appraised value of the yacht was $17,000. Had all the materials entering into its construction been of foreign production, there would not have been any question as to such appraisement. The portion identifiable as of American production was carved out of that price, not because it was not an integral part of the yacht, but because Congress had specially provided that duty should not be assessed thereon. For all other purposes, the American goods were a part of the yacht.

In the case of *United States* v. *Auto Import Co. et al.*, 168 Fed. 242, T. D. 29599, the merchandise at issue was automobile tires which had been imported together with automobiles but not attached to the rims. The court recognized that tires are separate articles of commerce, and that automobiles are often imported without tires, but—

* * * when the incomplete car and the four tires necessary to put it in running order are imported together, shipped by the same vessel for the same importer, and entered at the custom house at the same time, the parts are dutiable as a whole.

In commenting upon *Hillhouse* v. *United States*, 152 Fed. 163, cited and relied upon by plaintiff herein, Judge Lacombe, writing the decision for the circuit court of appeals in the *Auto Import Co.* case, *supra*, stated:

Reference is made to our decision in Hillhouse v. United States, 152 Fed. 163, 81 C. C. A. 415, where it was held that exemption from duty as a "household effect" of a car used abroad for more than a year would not cover new parts added to it just before shipment. *It would be an unreasonable extension of that proposition to hold that importations dutiable at some particular rate as completed articles may be constructively separated for duty purposes into parts subject to different classifications.* [Italics not quoted.]

It is the opinion of this court that it would also be an unreasonable extension of the scope of the exemption granted to American goods to hold that a vessel may be separated into the respective foreign and American parts thereof for purposes of ascertaining the rate of duty applicable thereto.

For the reasons stated, judgment will be entered in favor of the Government.

### DISSENTING OPINION

CLINE, Judge: I regret that I am unable to agree with the decision of my associates herein.

The importation in this case consisted of a 55-foot auxiliary schooner named "Keewatin" containing certain parts, such as, a marine engine, hardware, sails, steering gear, winch, and toilets, which were of American manufacture. It arrived at the port of Bar Harbor, Maine, from Newfoundland under its own power.

It appears from the official papers that the parts which were of American origin were shipped to the plaintiff herein in Newfoundland where they were used for outfitting the yacht. The appraiser found, after making a correction for an error in the invoice, that the value of the American goods returned which had not lost their identity was $4,245 and the value of the goods of foreign origin was $12,755.

The collector assessed duty at the rate of 30 per centum ad valorem on $12,755 under paragraph 370 of the Tariff Act of 1930 and allowed free entry to the balance as American goods returned under paragraph 1615 (a), as amended. The plaintiff claims that duty should have been assessed on the $12,755 at the rate of 15 per centum ad valorem under paragraph 370, as amended by the trade agreement with Canada, T. D. 49752.

The pertinent provisions of said tariff act and trade agreement are as follows:

PAR. 370. Airplanes, hydroplanes, motor boats, and parts of the foregoing, 30 per centum ad valorem. The term "motor boat," when used in this Act, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought

into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, * * *.

PAR. 370 [as amended by T. D. 49752]. Motorboats, including yachts or pleasure boats, whether sail, steam, or motor propelled, valued at not more than $15,000 each, 15% ad val.

PAR. 1615 [as amended by the Customs Administrative Act of 1938, 52 Stat. 1092]. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

The issue in the case is, therefore, whether the collector properly used the rate applicable to yachts valued at over $15,000 in assessing duty on the portion of the importation of foreign origin valued at $12,755. In allowing free entry to the parts which were of American origin, the collector determined that they were separable and that they had not been advanced in value or improved in condition. Nevertheless, in determining the rate to be applied, he considered the importation as an entirety valued at $17,000.

It has been held that where an importation consists partly of articles which are dutiable and partly of articles which are nondutiable, it should not be considered an entirety provided its component parts may be constructively separated for duty purposes. *Hillhouse* v. *United States*, 152 Fed. 163, T. D. 27831, certiorari denied 208 U. S. 615; *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, T. D. 34553; T. D. 45320 (4); T. D. 51193 (2).

*Hillhouse* v. *United States, supra*, involved a provision of the Tariff Act of 1897 which provided for free entry of household effects of persons from foreign countries if actually used abroad by them not less than 1 year. The importation consisted of an automobile which had been purchased abroad, used 4 months there, brought here, then taken abroad again and used 9 months, then returned here after extensive repairs had been made on it. The court said:

* * * As to so much of the machine as was a new manufacture which had not been used abroad for a year, duty was properly exacted; but when the value of such new manufacture is easily determinable there seems no good reason for requiring so much of it as has been used abroad for the requisite time to pay duty also.

*Denike* v. *United States, supra*, involved an importation consisting of wheels and axles of American manufacture with tires made in Germany attached thereto which had been shipped to Mexico for alterations. It was held that the goods were not dutiable as entireties; that the wheels and axles were entitled to free entry; and that the tires were dutiable. The court said (pp. 365-6):

Having in mind the purpose of Congress to favor goods the growth, produce, or manufacture of the United States, we think that merchandise imported into the country made up in part of American goods entitled to free entry and in part of goods not entitled to free entry should not be assessed for duty as entireties if the components of the importation are in fact distinct articles and so distin-

guished one from the other that their several dutiable quantities, weights, measures, or values may be correctly ascertained. * * * This conclusion is supported by the principle laid down in the case of Hillhouse v. United States (152 Fed., 163), in which it was held that an automobile entitled to free entry when exported from the United States was not dutiable as *an entirety* on reentry by reason of new parts added while abroad and that the additions only were subject to duty. The Government contends that Hillhouse v. United States was distinguished in United States v. Auto Import Co. (168 Fed., 242), by Judge Lacombe, who announced the opinion of the court in both cases. Judge Lacombe did distinguish the two cases and did say in the Auto Import Co. case that it would be an unreasonable extension of the proposition in the Hillhouse case "to hold that importations dutiable at some particular rate as completed articles may be constructively separated for duty purposes into parts subject to different classifications." Judge Lacombe did not say, however, that an importation made up in part of dutiable articles of foreign origin and in part of nondutiable articles of American origin was dutiable as an entirety, and the language used by him went no farther [sic], in our opinion, than to indicate that the doctrine of Hillhouse v. United States could not in any event be extended to completed articles, all the constituents of which were dutiable. [Italics quoted.]

*Auto Import Co.* v. *United States*, 168 Fed. 242, T. D. 29599, referred to in the *Denike* case, involved automobiles imported in crates, each crate containing a complete machine including four tires, which were not placed on the wheels. The entire importation, being dutiable and of foreign origin, was held to be dutiable as an entirety.

Since the importation here consists of articles of American origin and articles of foreign origin which are in fact distinct articles and whose quantity, weights, measures, and values may be ascertained, the principles announced in the *Denike* case apply. Therefore, the merchandise may not be assessed with duty as an entirety.

Section 503 (c) of the Tariff Act of 1930 provides:

For the purpose of determining the rate of duty to be assessed upon any merchandise when the rate is based upon or regulated in any manner by the value of the merchandise, the final appraised value shall (except as provided in section 562 of this Act) be taken to be the value of the merchandise.

In the instant case the appraiser found the value of the portion of foreign origin to be $12,755. This is the final appraised value of the merchandise upon which duty is to be assessed. The rate to be used, therefore, is the rate applicable to yachts valued at not more than $15,000, namely, 15 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as amended by the trade agreement with Canada, T. D. 49752.

The protest should be sustained and the collector directed to assess duty on $12,755 at 15 per centum ad valorem under paragraph 370, as amended.