DONALD G. PARROT *v.* UNITED STATES (No. 4688)[1]

---

[1] C. A. D. 490.

United States Court of Customs and Patent Appeals, May 28, 1952

*Joseph F. Lockett* and *Walter E. Doherty, Jr.* for appellant.
*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

[Oral argument April 9, 1952, by Mr. Lockett and Mr. Weeks]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division (one judge dissenting), in conformity with its decision, C. D. 1308, overruling a protest of the importer against the collector's assessment of duty on the importation at the rate of 30 per centum ad valorem under paragraph 370 of the Tariff Act of 1930.

The importation involved in this controversy consisted of a 55-foot auxiliary schooner yacht named "Keewatin" which was imported from Newfoundland under its own power on July 7, 1947. Various parts of the yacht, such as a marine engine, sails, steering gear, winch, hardware, and other items, were of American origin and were shipped to the appellant in Newfoundland where they were used in building and outfitting the yacht together with other articles manufactured or produced in Newfoundland. Upon importation, appellant claimed, on the basis of said American goods used in building the "Keewatin", to be entitled to certain reductions in tariff duty assessed under paragraph 370 of the Tariff Act of 1930, as modified by trade agreement with Canada, T. D. 49752, by virtue of paragraph 1615 (a) of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938, 52 Stat. 1092.

Paragraph 370 of the Tariff Act of 1930, under which the yacht in question was assessed, provides as follows:

Par. 370. Airplanes, hydroplanes, motor boats, and parts of the foregoing, 30 per centum ad valorem. The term "motor boat," when used in this chapter, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, * * *

Under the trade agreement between the United States and Canada, T. D. 49752, paragraph 370 was modified as follows:

Motorboats, including yachts or pleasure boats, whether sail, steam, or motor propelled, valued at not more than $15,000 each, 15% ad valorem.

Paragraph 1615 (a) in the free list of the Tariff Act of 1930, as

amended by the Customs Administrative Act of 1938, provides as follows:

Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

For reasons presently to appear, we are setting out parts of two of the forms in the record.

The *pro forma* invoice, Form 138, upon which entry in this case was based, describes the merchandise as follows:

| | |
|---|---:|
| 55 foot aux. schooner yacht Keewatin | $17, 000 |
| Less American returned goods | 4, 267 [1] |
| | $12, 733 |

The invoice bears a stamped notation "VALUES APPROVED, APPRAISER" which notation is initialed in red pencil, apparently by the appraiser.

The report of the appraising officer on Customs Form 6431 shows, *inter alia*, the following information:

| | | STATE PRICE—UNIT OF QUANTITY AS— | | |
|---|---|---|---|---|
| Date of purchase | Quantity invoiced | Invoiced | Entered | Appraised |
| 6/23/47 | ONE | $12, 773 | $12, 773 | $12, 773 [2] |
| | | 4267 | 4267 | 4267 [3] |

| | RATE AND PARAGRAPH AS— | |
|---|---|---|
| Entered | Sender's opinion | Reply |
| 370 15% | 370 30% | TD 49752 |
| 1615 FREE | 1615 FREE | p. 370 CM 16.2b |
| | | Equipment if of American mfrer f. o. o. |
| | | p. 1615–a |
| | | See T. D. 45320/4 |
| | | See remarks |

The appraiser found, after making certain corrections for errors in the invoice, that the value of American goods which had not lost their identity was $4,245 and the value of the goods of foreign origin was $12,755.

The collector allowed free entry to the $4,255 worth of identifiable American goods returned, under paragraph 1615 (a), *supra*. However, the collector, considering the appraised value of the boat to exceed $15,000, assessed duty under par. 370 as modified, *supra*, at the rate of 30 per centum ad valorem. This rate he applied only to $12,755, the value of that portion of the boat which is of foreign origin.

[1] Later corrected to $4,245.
[2] Later corrected to $12,755.
[3] Later corrected to $4,255.

Section 503 of the Tariff Act of 1930, in force at the date of importation, reads in part as follows:

(a) * * . * the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the entered value or the final appraised value, whichever is higher.

* * * * * * *

(c) For the purpose. of determining the rate of duty to be assessed upon any merchandise when the rate is based upon or regulated in any manner by the value of the merchandise, the final appraised value shall * * * be taken to be the value of the merchandise.

The gravamen of appellant's protest against the action of the collector is that by virtue of section 503 (c), *supra*, the collector is bound by law to assess on the basis of final appraised value; that the final appraised value of the yacht is the appraised value of the goods of foreign origin, namely, $12,755; and, that since this final appraised value is, according to appellant, less than $15,000, the collector was bound to apply a rate of duty of 15% ad valorem as provided in T. D. 49752, *supra*.

The majority of the Customs Court were of the opinion that although the previously exported goods of American origin were readmitted duty free under the provisions of par. 1615 (a), *supra*, the importation should be considered as an *entirety* consisting of goods of American plus foreign origin for the purpose of ascertaining the *rate* of duty applicable to the dutiable portion thereof. The court also stated:

* * * The portion identifiable as of American production was carved out of that price, not because it was not an integral part of the yacht, but because Congress had specially provided that duty should not be assessed thereon. For all other purposes, the American goods were a part of the yacht.

In view of this, the majority of the court below ruled against appellant's protest.

Counsel for the Government devote a considerable portion of their brief before this court to partial repudiation of the act of the collector in allowing any reduction in duties for the goods of American origin on the theory that such goods have been altered to such extent that they are no longer within the purview of par. 1615 as amended, *supra*. That issue is not properly before this court and will not be. considered. In fact, counsel concede in their brief that the Government is entitled to no more favorable judgment than it obtained in the court below.

Thus the question before the court is this: Was the collector correct in using the actual total value of the yacht, which is equal to the sum of the appraised value of identifiable goods of American origin ($4,245) and the appraised value of goods of foreign origin ($12,755), to determine the *rate* of duty to be assessed, although using only the

appraised value of the goods of foreign origin to determine the *amount* of duty?

Numerous cases have been cited by each party as authorities. We have reviewed these cases and find none of them to be directly in point, or nearly so, with the case at bar. Perhaps the most pertinent case is that of *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, T. D. 34553, which was relied on for authority in the dissenting opinion below and by counsel for appellant before this court.

In the *Denike* case, *supra*, railroad wheels and axles of American manufacture with tires made in Germany were sent to Mexico, where the tires were repaired, and the articles were later brought back to the United States. The court held that the goods when returned were not dutiable as entireties. By virtue of a statute similar to par. 1615, *supra*, the wheels and axles were held by the court to be entitled to free entry because they had not been changed in condition; only the tires were held dutiable. In the *Denike* case, this court relied for authority on the case of *Hillhouse* v. *United States*, 152 Fed. 163, T. D. 27831, certiorari denied 208 U. S. 615, which case was also relied on by the dissenting judge in the court below. It is clear, we think, that the *Denike* case, *supra*, did not involve the question we have before us.

Paragraph 370, *supra*, as modified by T. D. 49752, *supra*, provides, *inter alia*:

\* \* \* motor boats \* \* \* 30 per centum ad valorem. \* \* \* Motor boats, including yachts \* \* \* *valued* at not more than $15,000 each, 15% ad valorem. [Italics supplied.]

We fail to see how the term *"valued"* as used here can be taken to mean anything other than the total actual value of the yacht as an entity. It is, in our opinion, too strained an interpretation to construe it in the light of application of paragraph 1615, *supra*, as meaning the appraised value of goods of foreign origin only. True, identifiable goods of American origin have been constructively separated from the rest of the yacht for purpose of separately appraising them in order to avail appellant of duty exemptions under paragraph 1615 (a), *supra*. But this is only a legal fiction. These goods have been integrated with the goods of foreign origin and comprise an essential part of the yacht and certainly form a part of the actual value of the yacht.

It seems to us that when the collector constructively separated from the rest of the yacht those parts which could be identified as goods of American origin and admitted them duty free, appellant received all the exemption he was entitled to under authority of the cases considered by us, particularly the *Denike* and *Hillhouse* cases, *supra*. We concur with the following statement of the majority of the court below:

It is the opinion of this court that it would \* \* \* be an unreasonable extension of the scope of the exemption granted to American goods to hold that

a vessel may be separated into the respective foreign and American parts thereof for purposes of ascertaining the rate of duty applicable thereto.

Appellant asserts, however, that section 503 (c) is controlling here. That section, he points out, requires that the rate of ad valorem duty to be assessed be based on the *final* appraised value of the merchandise. He contends that the appraiser never furnished to the collector a final appraised value of $17,000; and that the appraiser in fact returned two final appraised values, namely, a value of $4,245 for the identifiable goods of American origin and a value of $12,755 for the goods of foreign origin. To support these arguments, counsel for appellant points out the manner in which the value of foreign goods and the value of duty free goods of American origin are separately listed in the report of the appraiser on Customs Form 6431, set out in part above. Also in support of these arguments, counsel points out that the notation by the appraiser on the *pro forma* invoice reads "Values Approved," as noted above, rather than "Value Approved." [Italics supplied.]

The collector must, of course, comply with section 503 (c), *supra*. However, we think appellant's other arguments are without merit. In our opinion, the final appraised value in this case is the appraised value of the yacht as an entity. This is clearly the sum of the appraised values of goods of American and foreign origin respectively. Although the appraiser in his report on Customs Form 6431 listed the two items separately, we think the proper significance to be attached to this is that the report was made in this manner to more clearly present to the collector the pertinent information which the former is obliged to furnish the latter in compliance with the provisions of section 500 (a) of the Tariff Act of 1930. Appellant, by his arguments, in effect urges us to hold that there was no final appraised value of the yacht as a whole, on which the collector could properly base his decision, simply because the appraiser did not go through the mechanics of totaling the separate values on form 6431. It is our opinion that to do this would be to ignore the substance of the facts and hinge outcome of the case on a formal technicality which we think is insignificant in this particular case. Moreover, looking to the *pro forma* entry, set out in part, *supra*, we find that one of the values approved by the appraiser therein is a:

55 foot aux. schooner Yacht Keewatin—$17,000

In our opinion, rather than supporting appellant's above-noted contentions, as he claims, this latter form is more logically interpreted as an indication by the appraiser that the value of the yacht as a whole or entity is $17,000.

In view of the foregoing, we think the collector was not in error, and the decision of the Customs Court overruling appellant's protest is *affirmed*.