(C. D. 1628)

C. J. Tower & Sons *v.* United States

United States Customs Court, Third Division

(Decided June 29, 1954)

Barnes, Richardson & Colburn (Joseph Schwartz and Edward N. Glad of counsel) for the plaintiff.

Warren E. Burger, Assistant Attorney General (Arthur R. Martoccia and Richard E. FitzGibbon, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The controversy in this case involves the duty assessed by the collector upon four motorboats imported from Canada, containing inboard motors, three of which were Chrysler crown engines manufactured by the Chrysler Corp. of Detroit, Mich., and one a Nordberg engine, manufactured by Nordberg Manufacturing Co. of Milwaukee, Wis. The motorboats and engines were returned by the appraiser as "one motor boat complete with engine," in some instances "installed and ready to run," and in others "except for being bolted to supporting structure" or "frame." Duty was assessed upon the motorboats and American-made engines in entry 6312, protest 175018–K, entered January 9, 1951, at 15 per centum ad valorem under paragraph 370, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and upon the remaining motorboats, including American-made engines, in the other entries involved at 7½ per centum ad valorem under paragraph 370, Tariff Act of 1930, as amended by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739.

In the letters of transmittal of the protests to this court, the collector gave as his basis of the affirmation of his official action T. D. 52191, C. I. E. 168/49.

The plaintiff contends that the marine engines are properly entitled to entry without the payment of duty under the provisions of paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as American goods returned, without having been advanced in value or improved in condition.

At the trial, counsel for both sides orally entered into the following stipulation:

MR. SCHWARTZ: * * * I would like to ask whether Government's counsel

will stipulate with me that the Customs regulations relating to American goods returned were complied with in this case.

MR. MARTOCCIA: We will so stipulate.

MR. SCHWARTZ: And further, that the engines were manufactured in the United States and were returned after having been exported without having been advanced in value or improved in condition by any process of manufacture or other means, other than having been installed as parts of the boats in which they were returned to the United States.

MR. MARTOCCIA: All right, I will make that concession.

Mr. John A. Frauenheim testified that he was president of the Jafco Marine Basin, Inc., the consignee and distributor for these particular boats in the United States; that his company not only sells boats, but repairs and replaces marine engines. The witness identified the Chrysler engines according to the Chrysler price list, which was received in evidence to show that marine engines of the types used in this case were separate articles of commerce. The witness also testified that his company is a distributor for three brands of marine engines, which are sold at retail and replaced in boats at retail, as well as frequently removed from boats for repairs. He stated that it was an easy matter to remove an engine from a boat and, in such operation, the engine as well as the boat remains intact. He testified that engines and boats are manufactured by different factories.

On cross-examination, the witness further testified that motorboats, including engines, are also listed in catalogs but, in all marine pleasure-craft industries, the warranty of the boat is separate from that of the engine, inasmuch as they are two different products.

The plaintiff contends that the marine engines of American manufacture had not lost their identity when installed in the motorboats of foreign manufacture. The cases of *Donald G. Parrot* v. *United States*, 26 Cust. Ct. 103, C. D. 1308, *Paramount Pictures, Inc.* v. *United States*, 6 Cust. Ct. 196, C. D. 461, and *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, T. D. 34553, were cited.

Counsel for the Government observes that this case arose because of a change of practice of the Bureau of Customs. In that respect, counsel significantly states:

* * * It seems that prior to April 13, 1949, there was an established uniform practice to permit the free entry of merchandise of this character, but the Bureau decided that such practice was contrary to law and consequently published the aforementioned change of practice. * * * The sole question then is whether or not the engines herein were advanced in value or improved in condition prior to their importation into the United States.

Counsel then makes the statement: "It seems beyond argument that their condition was improved by their installation in boats which was the sole purpose of their manufacture." Although admitting that the holdings in the *Parrot* case, *supra*, and the *Denike* case, *supra*, are contrary to the Government's contention in the pending

case, Government counsel believes "that the Court in those cases was influenced by the former ruling of the Bureau."

In that connection, it might be noted that the court's province is the construction of the tariff laws in the light of the intent of Congress in writing same, as was amply evidenced in the *Denike* case, *supra*. The courts are not influenced by the interpretative rulings made for the guidance of customs officers. But rather, the courts, as amply demonstrated in a long line of decisions, have been called upon to consider the legality of the acts of customs officials.

The various Commissioners of Customs have made several rulings interpretative of the appellate court's decision in the *Denike* case, *supra*, relative to the classification of American goods when returned to the United States as parts of foreign articles, but not until the administrative ruling at issue herein did the Customs Bureau declare it irrelevant to the issue.

It is enlightening to observe the various interpretations of the Customs Bureau as to the application of said *Denike* case, *supra*. On December 5, 1931, Commissioner of Customs Eble, in abstracts of decisions published for the information of customs officers, 60 Treas. Dec. 1025, T. D. 45320, stated:

(4) *American goods returned.*—Held that free entry may be allowed engines and other fittings and equipment of American manufacture attached abroad to motor boats of foreign manufacture, provided the components of the importation may be constructively separated for duty purposes in accordance with the principle announced in T. D. 34553, and provided the law and regulations relative to the free entry of domestic products returned are complied with.

If, however, an engine or other article of American origin has in fact been substantially advanced in value or improved in condition by work done in fitting or attaching it to a motor boat or by other means while the article is abroad, it would be excluded from the privilege of free entry under paragraph 1615 of the tariff act of 1930. Letter to collector of customs, Portland, Me., dated November 24, 1931.

On February 19, 1945, Acting Deputy Commissioner of Customs G. H. Griffith, in abstracts of decisions published for the information of customs officers, 80 Treas. Dec. 29, T. D. 51193, stated:

(2) *American goods returned.*—Articles of American manufacture exported and and used abroad in the repair of a motor vehicle which is subsequently returned to this country may be accorded free entry on return to the United States, provided the components of the importation are readily separable one from the other in accordance with the principle announced in T. D. 34553, and provided the importer complies with the law and regulations applying to the free entry of American goods returned.

If, however, the incorporation of the repair parts in the repaired article destroys the identity of such parts or advances them in value or improves them in condition, or if the repaired article and repair parts are not readily separable one from the other, in accordance with the principle announced in T. D. 34553, the repair parts shall be excluded from classification under paragraph 1615, Tariff Act of 1930,

as amended. T. D. 45320 (4) modified. Bureau letter to the collector of customs, St. Albans, Vt., February 12, 1945.

Finally, on April 13, 1949, Deputy Commissioner of Customs W. R. Johnson, in abstracts of decisions published for the information of customs officers, 84 Treas. Dec. 109, T. D. 52191, revoked the foregoing decisions as follows:

CLASSIFICATION

*Assembled articles.*—If work is done abroad to assemble or combine an American article with another article, the American article has been advanced in value or improved in condition so as to be excluded from paragraph 1615 (a), Tariff Act of 1930, as amended, even though the work done constituted only a simple assembly. T. D.'s 30268 and 38991; and R. D. 7632. Likewise, if both articles assembled together abroad are American, each of them has been advanced or improved so as to exclude both from that provision.

The work of assembling or combining the articles abroad cannot be considered a mere alteration within the purview of paragraph 1615 (g) of the tariff act, as amended, unless the combination is only the addition to the article exported from the United States of some accessory or the like which does not result in the creation of a new or different article. For example, the encasement of a watch would be more than an alteration of the watchcase or the movement. T. D. 46447.

The principle of *Denike* v. *United States*, T. D. 34553, is not regarded as relevant to a case involving American parts which have been advanced in value or improved in condition. In the *Denike* case, the repair work abroad was confined to the foreign tires, no work was done directly to the wheels and axles, and no assembly abroad was involved.

In certain special situations, the Congress has expressly authorized partial or total exemptions from duty in connection with American articles which have been advanced in value, improved in condition, or incorporated into new or different articles abroad (paragraphs 1410, 1615, and 1726, Tariff Act of 1930, as amended). Under the rule *expressio unius est exclusio alterius* it seems that the only exceptions to the tariff policy of not granting exemptions to American articles which have been advanced in value, improved in condition, or made into new or different articles abroad are those specifically authorized by the Congress.

In view of the foregoing considerations, the principle of the *Denike* case is not applicable to permit separate tariff classifications for parts of physical entireties assembled abroad in whole or in part with American parts; and an automobile made in a foreign country by the assembly of a complete body of United States or foreign manufacture and a complete chassis of United States manufacture is dutiable on its full value under paragraph 369 of the Tariff Act of 1930. T. D.'s 45320 (4) and 51193 (2) revoked.

In any case in which the foregoing instructions will require the assessment of duty without an allowance of free entry which has been made under a uniform and established practice, whether with respect to automobiles or with respect to merchandise of any other character whatsoever, they shall be applied only to articles entered, or withdrawn from warehouse, for consumption after the expiration of 30 days after the publication of this abstract in the weekly TREASURY DECISIONS. Bureau letter to collector of customs, San Diego, California, April 5, 1949. (511.4)

The case of *S. H. Pomerance Co., Inc., for Acct. of Norman M. Morris Watch Corp.* v. *United States*, 21 Cust. Ct. 335, Reap. Dec. 7632, one of the cases cited by Acting Commissioner Johnson in the fore-

going ruling, is a reappraisement which arose on account of the appraiser allocating to the importation of foreign watches certain charges characterized as "casing-up expenses," one-half to the value of the movements and the other half to the value of the cases. The trial court at the outset of its decision pointed out that "Watches are not specifically enumerated in the Tariff Act of 1930. Neither are they dutiable as entireties." The watch movements were subject to duty at specific rates and the watchcases were subject to duty at both specific and ad valorem rates. If the casing-up expenses were allotted entirely to the movements and not to the cases, the ad valorem duty upon the cases would be lower than with such expense made a part thereof. In its decision, the trial court remarked that:

* * * to ignore said enhancement of the value of the cases as well as of the movements by combining them into entireties as watches would be to overlook one of the underlying purposes of the Tariff Act of 1930, which, as stated in the preamble to said act, reads:

An Act To provide revenue, to regulate commerce with foreign countries, *to encourage the industries of the United States, to protect American labor,* and for other purposes. [Italics quoted from decision of court.]

If the theory of plaintiff were to be approved, it would seem to follow that watchcases when imported with movements uncased would be appraised at the same value as corresponding watchcases containing movements when imported. It is not believed that such was the intent of Congress.

Upon an appeal for review, *id.* v. *id.*, 28 Cust. Ct. 515, Reap. Dec. 8073, the appellate division pointed out that the watchcases were not sold to the importer at the freely offered price for watchcases. The manufacturer of the movements, not the importer, purchased the cases at such freely offered price. It seems that the watch movement manufacturer also purchased other appurtenances necessary for a complete watch from other manufacturers and assembled the various parts into complete watches. Upon resale by the movement manufacturer, a profit was added upon the cases and other parts, as well as upon the movements, and the complete watches sold by the movement manufacturer to the importer were "the articles of commerce with which this reappraisement side of the court is dealing. * * * *Had it been established that the watchcases were purchased by the importer herein and that the only connection with the shipper was assembling therein the movements, there might have been merit to appellant's assignment of errors.*" [Italics ours.]

No importance was given to the importation of the complete watches as entireties. It was specifically pointed out that for duty purposes the watchcases and the movements were not entireties. All the court had before it was the proper allotment of certain charges of assembling foreign cases with foreign movements. The reappraisement had nothing to do with the subject of entireties nor the classification of American goods and foreign goods combined together.

The case of *C. B. Richard & Co.* v. *United States*, 19 Treas. Dec. 24, T. D. 30268, G. A. 6963, decided January 14, 1910, cited by the Acting Commissioner as his authority for denying free entry to the product of American labor, also involved watches in a complete condition, that is, the cases and the movements combined. It was there contended that the watchcases were entitled to free entry as American goods returned. Although the Board of General Appraisers in that case went to great length to justify an assessment of duty upon the watchcases, not only upon the theory that they had lost their identity by being combined with the movements, but because the cases were entireties with the movements and had been advanced in value by reason of such combination, the protest was overruled because the mandatory regulations of the Secretary of the Treasury attending the free entry of American goods returned had not been complied with, which precluded a judgment in favor of the plaintiff. The dicta in the *Richard* case would appear to be at variance with the earlier decision by the Circuit Court of Appeals in *Hillhouse* v. *United States*, 152 Fed. Rep. 163, T. D. 27831, where it was held that exemption from duty as a "household effect" of an automobile used abroad for more than a year would not cover new parts added to it just before shipment. The automobile, although an entirety with the new additions, was admitted free of duty, but duty was assessed upon the added new parts. This case was regarded as announcing the principle that where alterations have been made to an American article in a foreign country, even though such completed article constitutes an entirety, the American portion, or the portion which ordinarily would be exempt from duty under some provision of the American goods returned paragraph, is still exempt from duty.

In commenting upon the *Hillhouse* case, *supra*, in *Auto Import Company* v. *United States*, 168 Fed. 242, T. D. 29599, where a foreign-made automobile and four tires were shipped together, but the tires were not attached to the wheels, and it was sought to have the tires separated for duty purposes from the automobile, Judge Lacombe, writing the decision for the United States Circuit Court of Appeals, Second Circuit, stated that—

* * * it would be an unreasonable extension of that proposition to hold that importations dutiable at some particular rate as completed articles may be constructively separated for duty purposes into parts subject to different classifications.

The third citation as authority for changing the treatment of American goods combined with foreign goods upon reimportation to the United States was the case of *United States* v. *Bird*, 11 Ct. Cust. Appls. 229, T. D. 38991. The controversy there concerned certain generator spiders, generator shafts, pole pieces, and pole splines, which were conceded by the Government to be American goods actually

exported but incorporated in such a manner in electric generators imported into the United States that their identity could not be established by physical examination. The collector had assessed duty upon the generators as entireties, stating that it was impossible to segregate the alleged United States manufactures. The appellate court held that the identity of the articles had been established by stipulation but, nevertheless, found the articles not entitled to exemption as American goods returned, because proof had not been submitted to establish that their value or condition had not been changed.

We are of the opinion that the collector in that case assessed duty upon the generators, including the American parts, upon the correct theory of law, that is, that the parts had become so incorporated with the generators that it had become impossible to identify them by physical examination, even though it was agreed that such parts were American products. That case would have no application in the present controversy where it was stipulated and agreed between the parties that the engines had not been advanced in value or improved in condition.

In the case of *Denike* v. *United States, supra,* sets of engine wheels, carrying their tires and mounted on axles, were sent to Mexico for repair. The wheels and axles were of American manufacture, but the tires were of German manufacture, which, after importation into this country, were fitted to the American wheels. No work was done upon the wheels or the axles. The cost of the repair to the tires was $15. After repair, the entire assemblies were returned to the United States, where the driving wheels on axles were entered free and the repairs were entered as dutiable. However, the collector assessed duty upon the wheels, tires, and axles as entireties. The importer contended that the only dutiable portion was the charge for labor. The Board of General Appraisers overruled the protest, holding that the improved condition of the tires advanced the entire article in value. The board refused to follow the *Hillhouse* case, *supra,* a household-effects case, because the doctrine announced in that case had not been applied to the American goods returned paragraph by a court of competent jurisdiction.

The appellate court, in reversing the board, clearly distinguished between imported articles, partly composed of American articles and foreign articles, and articles as entireties, composed entirely of foreign articles, the court stating:

By paragraph 500 of the tariff act of 1909 Congress clearly indicated its intention that articles the growth, produce, or manufacture of the United States should be entitled to free entry when returned after having been exported without having been advanced in value or improved in condition by any process of manufacture or other means. This intention was given additional emphasis in the proviso to the paragraph, under which it would seem that exported goods manufactured in the United States of imported materials and materials of

American origin may be reimported upon payment of duties equal to the drawbacks allowed at the time of exportation on the imported materials used in the original manufacture.

*Having in mind the purpose of Congress to favor goods the growth, produce, or manufacture of the United States, we think that merchandise imported into the country made up in part of American goods entitled to free entry and in part of goods not entitled to free entry should not be assessed for duty as entireties if the components of the importation are in fact distinct articles and so distinguished one from the other that their several dutiable quantities, weights, measures, or values may be correctly ascertained.* From the evidence in the case, which is undisputed, it appears that axles, wheels, and tires are made by different factories and are not only readily separable one from the other, but are as a matter of fact frequently separated either to make repairs or to substitute a new axle, wheel, or tire. [Italics not quoted.]

The appellate court, in commenting upon the distinction between the *Hillhouse* and *Auto Import Co.* cases, *supra*, stressed the fact that Judge Lacombe did not say that an importation made up in part of dutiable articles of foreign origin and in part of nondutiable articles of American origin was dutiable as an entirety *"and the language used by him went no farther, in our opinion, than to indicate that the doctrine of Hillhouse v. United States could not in any event be extended to completed articles, all the constituents of which were dutiable."* [Italics not quoted.]

In *United States* v. *Adolphe Schwob, Inc.*, 21 C. C. P. A. (Customs) 116, T. D. 46447, watchcases and watch movements, separately imported for sale, unsuccessfully offered for sale in the United States and then assembled into watches and exported, were held to be within the scope of the drawback statute entitling the exporter to drawback.

In the case of *Paramount Pictures, Inc.* v. *United States*, 6 Cust. Ct. 196, C. D. 461, certain photographic lenses of foreign manufacture were mounted by means of an intricate process in order to adapt them for use in particular cameras. These mounted lenses were taken from the United States together with the cameras with which they were used. Upon reimportation, all of the photographic apparatus, including the cameras, was admitted free of duty under the provisions of paragraph 1615 of the Tariff Act of 1930, as American goods returned, except the lenses of foreign manufacture and their American-made mounts.

The plaintiff contended that the foreign lenses, at the time of exportation, were incorporated into American-manufactured mountings by a manufacturing process in the United States, and that such lens and mounting constituted a manufacture of the United States. Also, that each lens and mounting therefor was a part of an American camera at the time it was exported and, subsequently, it was imported and should be free as a manufacture of the United States. Alternatively, it was claimed that duty should have been taken only on the value of

the glass lenses, as originally imported from aboard, and not on the combined value of the lenses and mountings.

The Government's contention in that case is quite similar to the plaintiff's claim in the pending case. It was there urged on behalf of the Government that the lenses enclosed within the brass shells were concededly of foreign origin, and, although something had been done to them after arrival in the United States and before exportation, they were, nevertheless, the same lenses originally imported; that the process in the United States failed to change their name, character, or use, and, therefore, such work performed thereon did not constitute a manufacture; and that because two articles are designed and constructed to be used together such circumstance does not necessarily make either a part of the other, citing *United States* v. *Willoughby Camera Stores*, 21 C. C. P. A. (Customs) 322, T. D. 46851.

In holding that the lenses were subject to duty, not having been registered when shipped from the United States with the cameras, the court also held that the mountings for such foreign-made lenses, having been produced in the United States were free as American goods returned.

In the recent case of *Frank H. Fenderson* v. *United States*, 32 Cust. Ct. 173, C. D. 1599, an American-made excavator, which had been exported to Canada and returned, without having been advanced in value or improved in condition by any process of manufacture or other means, when returned to the United States was attached to a tractor, the product of Canada, as a means of propulsion. Duty was assessed upon the two pieces of machinery as an entirety, on account of a ruling there reported as C. I. E. 168/49, dated April 22, 1949. In holding that the excavator was not an entirety with the tractor, the court observed:

> The tractor and the excavator in question in the pending case each also retains its name and essential characteristics. Neither becomes a physical entity with the other when coupled together so as to merge or unite to form together a new or distinct article having a different name or character. According to the argument of Government counsel, if a steam engine were manufactured in Canada and entered the United States as the propulsion of a train or railway cars, all of the cars attached thereto by means of couplings might be dutiable along with the engine, even though the cars were recognized as being of American production and entitled to free entry.

The court there held that the excavator was entitled to free entry as American goods returned, the regulations attending free entry having been complied with.

It is clear from a long line of cases that American goods returned to the United States in combination with foreign manufactures are entitled to exemption from duty under the provisions of paragraph 1615 as American goods returned, so long as the American article itself has not been advanced in value or improved in condition and the identity

thereof not lost by reason of its having been combined with foreign merchandise in such a manner that it cannot be readily identified. In the case of *Donald G. Parrot* v. *United States, supra,* the collector at the port of Portland, Maine, correctly applied the principle announced in the *Denike* case, *supra,* in exempting the American manufactured goods which were incorporated upon the Canadian-built yacht. Items of American goods, valued at $221.78, which lost their identity after installation, were assessed as a part of the dutiable portion of the yacht. There, also, a Chrysler crown marine engine was included in the American goods granted an exemption from duty.

The *Parrot* case, *supra,* involved the question of the rate of duty rather than the exemption from duty as American manufactures. The rate of duty was held properly figured by the collector upon the basis of the value of the American goods as well as the foreign goods. The importer appealed that case to the Court of Customs and Patent Appeals, which affirmed the decision of this court in *id.* v. *id.,* 40 C. C. P. A. (Customs) 8, C. A. D. 490.

For the reasons stated, we hold that the marine engines in question, which were manufactured in the United States by American labor and shipped to Canada for the purpose of installing in Canadian-made boats and returned to the United States, are entitled to free entry as American goods returned under the provisions of paragraph 1615, as amended, *supra.*

Judgment will therefore, be entered in favor of the plaintiff directing the collector to reliquidate the entries and refund all duties taken upon the three Chrysler crown engines and one Nordberg engine at issue herein.