RAYBESTOS Co. *v.* UNITED STATES (No. 2436).[1]

PARAGRAPH 404, TARIFF ACT OF 1913—AMERICAN GOODS RETURNED—AD-
VANCED IN VALUE—ASBESTOS YARN.

Brass wire made in this country was sent abroad and twisted with asbestos so as to make a yarn for automobile brake linings. The wire is not entitled to free entry under paragraph 404, tariff act of 1913, as American goods returned "without having been advanced in value or improved in condition." Even though the wire may be recovered, and, if recovered, would· be only scrap, it has been advanced in value and improved in condition by the manufacturing process which incorporated it with the asbestos into the yarn. The judgment of the Board of United States General Appraisers overruling a protest against its classification under paragraph 367 as "yarn  *  *  *  composed  *  *  *  in chief value of asbestos" is affirmed.

United States Court of Customs Appeals, November 4, 1924

APPEAL from Board of United States General Appraisers, G. A. 8790 (T. D. 40163)

[Affirmed.]

*Walden & Webster (Walter F. Welch of counsel)* for appellant.
*William W. Hoppin,* Assistant Attorney General *(Samuel M. Richardson* and *Charles D. Lawrence,* special attorneys, of counsel), for the United States.

[Oral argument October 17, 1924, by Mr. Welch and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This proceeding involves five protests made by the importer, The Raybestos Co., on duties assessed by the collector at Bridgeport, Conn., on certain asbestos metallic yarn, imported during the years 1920 and 1921. The article imported is a sort of yarn used in making automobile brake linings, composed of two fine brass wires, twisted and interwound with two spun asbestos threads called "slivers," making together a heavy yarn. The twisting of the brass wires and of the asbestos threads about them is all done in one operation in the manufacture of the asbestos yarn. The brass wire undergoes no change in the operation except the twisting, and incurs no labor charges except its proportionate part of the manufacturing process. On the hearing

---

before the Board of General Appraisers, it was stipulated that all of the brass wire used in said importation was entirely manufactured in the United States and that all the raw materials used in said brass wire were of American origin.   The proof before said board also seems to show that the brass wire might be removed from the asbestos yarn in its original condition except for the twisting, and as such would be scrap and of no value.   It was also shown that the material of chief value in the completed metallic asbestos yarn was asbestos.

The collector assessed duty at 20 per cent ad valorem on the importation as metallic asbestos yarn, entirely, under the provisions of paragraph 367, tariff act of 1913, which is as follows:

367. Manufactures of amber, asbestos, bladders, or wax, or of which these substances or any of them is the component material of chief value, not specially provided for in this section, 10 per centum ad valorem; yarn and woven fabrics composed wholly or in chief value of asbestos, 20 per centum ad valorem.

The importer protested, claiming that portion of the importation consisting of the brass wire to be exempt from duty, under the provision of the free list of the tariff act of 1913, paragraph 404, the relevant portion of which is:

404. Articles the growth, produce, or manufacture of the United States, when returned after being exported, without having been advanced in value or improved in condition by any process of manufacture or other means.   *   *   *

The Board of General Appraisers, on appeal, sustained the collector, and entered judgment accordingly.   Importer appeals.

The appellant relies strongly upon Denike *v.* United States (5 Ct. Cust. Appls. 364; T. D. 34553), as supporting his contention.   In the Denike case, car wheels and axles of American manufacture, with detachable tires of German manufacture, were sent into Mexico for tire repairs.   There the tires were reshaped and the whole sent back into the United States.   The collector assessed full duty on the whole, claiming the right to do so under paragraph 171, tariff act of 1909, which provided a duty of 1¼ cents per pound on "wheels for railway purposes."   The court there held, on appeal, in part:

Having in mind the purpose of Congress to favor goods the growth, produce, or manufacture of the United States, we think that merchandise imported into the country made up in part of American goods entitled to free entry and in part of goods not entitled to free entry should not be assessed for duty as entireties if the components of the importation are in fact distinct articles and so distinguished one from the other that their several dutiable quantities, weights, measures, or values may be correctly ascertained.

It will be observed the court bases its decision on the point that the car wheels in question were entirely unchanged on reimportation, while the wheels and tires were "in fact, distinct articles."   The wheels were still wheels, the tires alone were changed.

So it was in Hillhouse *v.* United States (152 Fed. 163).   There an automobile was imported and free entry was claimed under

paragraph 504, tariff act of July 24, 1897, providing for the importation of household effects and furniture of persons or families from foreign countries, used by them abroad for not less than one year, etc.   It was held that the automobile, although repaired abroad within a year, would come within this provision, the repairs only being subject to duty.   In that case, however, the automobile was still an automobile, a distinct entity, both before and after repair—the repairs, separable, were easily distinguishable, and had not lost their identity as such

The opinion, in the Hillhouse case, was delivered by Lacombe, Judge.   Later, in United States v. Auto Import Co., (168 Fed. 242), the same judge held, referring to the doctrine announced in the Hillhouse case, that where an automobile was imported in a knocked-down condition, with the tires unmounted:

> It would be an unreasonable extension of that proposition to hold that importations dutiable at some particular rate as completed articles may be constructively separated for duty purposes into parts subject to different classifications.

Testing this case by the rules announced in the cases cited, it appears the collector was right in assessing duty upon the article imported at the statutory rate.   The American article exported came back not as brass wire but as a component part of a new commercial article, namely, metallic asbestos yarn.   This new material was known by a different name, had different qualities, and was adapted for different uses.

The brass wire, if recovered by some process, would not be in its original condition, but twisted, so that it must be redrawn or straightened before again being used.   It is claimed the wire has not been "advanced in value or improved in condition by any process of manufacture," and that the wire, if recovered, would be worth less than originally.   The testimony shows that the union of the raw materials, brass wire and asbestos sliver, produces a product much more valuable than are these materials alone.   A reasonable interpretation of the statute would be, in view of the facts, that the value of both wire and sliver had been advanced by the process of manufacture.

It follows that the judgment of the Board of Appraisers should be *affirmed*.