(C. D. 1798)

IMPORT EXPORT SERVICE OF NEW JERSEY
THE BABB CO. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 8, 1956)

*Sharretts, Paley & Carter* (*Amos B. Sharretts* and *Jerome Fisch* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of an aircraft engine which had been exported to Canada and installed in an airplane, which was later imported into the United States. The merchandise was entered as two items, a "Beaver Standard Landplane," equipped, less engine, valued at $23,584, and a "Wasp Jr. Engine, Ser. #13135 installed in above plane," valued at $3,150. The items were appraised as entered, but duty was assessed on the airplane and engine as an entirety at 15 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. It is claimed that the engine is entitled to free entry under paragraph 1615 of said tariff act, as amended by the Customs Administrative Act of 1938, as American goods returned.

The pertinent provisions of the tariff act are as follows:

PAR. 370 [as modified]. Airplanes, hydroplanes, motor boats, and parts of the foregoing, 15% ad val.

PAR. 1615 [as amended]. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means. [Free.]

At the trial, it was agreed that there had been compliance with the customs regulations applicable to merchandise claimed to be free of duty as American goods returned.

Howard L. Hartman, who has been connected with the aviation industry since 1929, was called as a witness for the plaintiffs. He testified as follows: He had been with Pratt & Whitney Aircraft Co. of East Hartford, Conn., for 11 years, where he had been in charge of engine sales from 1935 to 1941; thereafter he had been connected with Babb Company of Newark for 6 years; and he is presently employed by Aircraft Engine & Parts Corp. of New York. He has been familiar with the type of engine described on the invoice herein since it was first manufactured by Pratt & Whitney late in 1929. Such engines are used in executive transport planes, cargo planes, trainers, amphibians, and crop dusters. Each engine manufactured by Pratt &

Whitney or its licensees has a different serial number, which it retains throughout its life. By means of the serial number 13135, the witness identified the imported Wasp Jr. engine as having been manufactured by Pratt & Whitney at East Hartford, Conn.

The witness testified that it is accepted and customary to switch engines from airplane to airplane and that an engine does not lose its identity by attachment to a particular aircraft, since it always retains its own serial number. He described what must be done to install an engine in an airplane, as follows:

* * * They remove the engine from the shipping box. They, in order to install it in the airplane, they have got to mount it in an engine mounting ring. They attach the exhaust pipes. They do quite a bit of make-ready work prior to installing what they call a power egg into an airplane. * * * They install the engine in the mount ring, which itself becomes a part of the airplane. It is more or less sub-assembly work.

The witness called this work "preparing the engine as a power egg or as a sub-assembly, which then later will be installed in the airplane." The engine mount ring, on which the engine has been mounted, would attach very quickly onto the airplane fuselage itself.

The witness guessed that the cost of the preparatory work would be $350 and that the cost of installing the engine in the plane would be $100. The airplane company, not the engine company, pays these costs.

To remove the engine, just the reverse procedure is used. The engine can then be fitted into another airplane.

The witness further testified that after the motor is installed, there is a complete airplane; that the engine is airworthy without the plane, but it could not be made airborne. He said that a complete airplane, with engine, wings, propellers, and whatever else is necessary to make the airplane airworthy, is an assembled entity.

Under paragraph 1615 of the Tariff Act of 1930, as amended, free entry of articles of American manufacture is authorized where such articles have been returned to the United States without having been advanced in value or improved in condition while abroad. Where such articles are returned to the United States in combination with foreign manufactures, the merchandise is not to be assessed with duty as an entirety, but the American goods are entitled to free entry under paragraph 1615 so long as they have not lost their identity as such nor have themselves been advanced in value or improved in condition. *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, T. D. 34553; *C. J. Tower & Sons* v. *United States*, 33 Cust. Ct. 14, C. D. 1628, and cases there cited.

In the instant case, the evidence establishes that the engine *per se* is of American manufacture and that it is identifiable as such although installed in an aircraft of foreign manufacture. The question before

us is whether it has been advanced in value or improved in condition by being placed in an engine mounting ring and installed in an airplane.

In *C. J. Tower & Sons* v. *United States, supra,* we held that American-manufactured marine engines, shipped to Canada and attached to Canadian-built motorboats and returned to this country, were entitled to free entry under paragraph 1615, as amended. In that case, it was stipulated that the engines had not been advanced in value or improved in condition by any process of manufacture or other means, other than having been installed in the boats. The witness testified that such engines were sold at retail and replaced in boats and frequently removed for repairs. He said that it was an easy matter to remove an engine and that, in such operation, the engine as well as the boat remained intact.

The difference between that case and the instant case is that here the installation of the engine in the airplane required the preparatory work of placing the engine in a mounting ring and then installing the same in the aircraft. These operations involved a considerable amount of work and were costly. The question is whether they improved the engine *per se*.

According to the witness, the engine mounting ring becomes a part of the airplane (presumably the fuselage). He also said that when the engine is removed, a procedure, the reverse of that used in installation, is followed. Thus, whatever is attached to the engine in order to install it in the aircraft does not become part of the engine itself. There is no evidence that the engine mounting ring is left on the engine when it is removed from one aircraft and placed in another. On rotation of an engine, an entirely new buildup might be necessary. The engine mounting ring and the installation work does not advance the value or improve the condition of the engine *per se*.

The situation here is the reverse of that involved in *Paramount Pictures, Inc.* v. *United States,* 6 Cust. Ct. 196, C. D. 461. In that case, the merchandise consisted of foreign-made photographic lenses set in brass shells, which had been incorporated through intricate processes in the United States into mountings of American manufacture and calibrated for use with certain cameras. It was held that the work in the United States did not cause the lenses to lose their identity as foreign lenses. The court said (p. 198):

* * * They [the lenses] are manufactured for use particularly as photographic lenses. In order to become capable of use, all such lenses are required to be mounted and thereafter calibrated to suit the particular camera with which used. Their character is not changed. Nor is there a change of the use to which they were dedicated. They are still photographic lenses.

They were, therefore, held subject to duty on reimportation, but the mounts, which were of American manufacture, were held free of duty under paragraph 1615 as American goods returned.

In the instant case, it appears that the engine, in order to become capable of use, must be mounted and installed in an airplane, but its character and use are not changed by these processes. There is no evidence that any of the work improved the performance of the engine as such.

For the reasons stated, we hold that the American-made engine involved herein is entitled to free entry under paragraph 1615, as amended, as American goods returned. The mounting, being of foreign manufacture, is dutiable, but no question has been raised in regard to it. Apparently, the value thereof was included in the value of the airplane, since its cost was paid by the airplane company.

The protest is sustained as to the claim that the engine is properly entitled to free entry under paragraph 1615 of the Tariff Act of 1930, as amended, as American goods returned, not advanced in value or improved in condition. Judgment will be rendered accordingly.