(C.D. 2198)

C. J. TOWER & SONS OF BUFFALO, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 25, 1960)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Paul J. Gavin* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise involved herein consists of printing press rollers assessed with duty at 12½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, and the President's notification of September 10, 1951, T.D. 52820, as parts of printing presses. It is claimed in the protest that the merchandise is entitled to free entry under paragraph 1615(a) of said tariff act, as amended by the Customs Administrative Act of 1938, or that it is subject to duty on the value of repairs or alterations only under paragraph 1615(g), as amended by the Customs Simplification Act of 1954.

At the trial, the protest was abandoned insofar as it relates to entry No. 16404 and as to the claim under paragraph 1615(g), dealing with repairs or alterations.

The pertinent provision of the tariff act is paragraph 1615(a), as amended, which exempts from duty—

Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

Daniel Stone, president of Perma-Flex Industries, Ltd., Toronto, Canada, called as a witness for the plaintiff, testified that his company received from the United States 30 American-made steel roller cores to be covered with a resilient vinyl material so that they could perform a feeding function, feeding either paper or box board through a printing machine.

A sample of a steel core was received in evidence as plaintiff's illustrative exhibit 1. It consists of a steel cylinder approximately 7 inches long and one-half inch in diameter. The witness stated that it was not the same size as those involved in this case either in dimension or in length.

A sample illustrating the merchandise as imported was received in evidence as plaintiff's illustrative exhibit 2. It consists of a steel core encircled for the greater part of its length by a resilient plastic material, thus forming a roller. The steel core is about 8 inches long and one-half inch in diameter. The plastic material is about 5¾ inches long and is about five-eighths of an inch thick, making the total thickness of the roller 1¾ inches. The core cannot be withdrawn from the plastic material.

Mr. Stone described the method of adding the plastic material to the steel core as follows:

Basically, the steel core is cleaned to make sure that there is no dirt or rust on same after we receive it. Then a bonding cement is applied to the steel shaft, and in turn, after the solvents are removed from the bonding cement, the coating material or the rolling material is applied as a hot melt mix in layers.

This being a thermoplastic material, we build this roller up, I think, about one-quarter inch wall thickness at a pass, as we call it, in a lathe until we reach the approximate diameter that the customer specifies. The roller is then ground to give it an accurate finish. It is trimmed and pretty generally that is our operation.

The witness explained that only the plastic material is ground, not the metal, and that the actual thickness of the rollers involved herein was seventeen thirty-seconds of an inch, nine thirty-seconds of an inch, and three-eighths of an inch, respectively.

According to the witness, the steel cores are normally called printing roller cores or printing press cores and the covered rollers are called printing press ink rollers, printing press feed rollers, or pull rollers.

It was conceded that the covered roller sells for more than the steel core.

Mr. Stone testified that when a printing press roller wears out or loses its efficiency for transferring ink, it is sent to a roller manufacturer for re-covering and that his firm does such work. He explained that to remove the old covering, the plastic material is stripped off in a lathe with a cutting tool; that that destroys the plastic material, but does not damage the steel core.

The witness testified that every steel core his firm receives from the United States for covering bears an identification number stamped upon it; that that number is not destroyed by the processing, but remains intact throughout the life of the core and is visible when the goods are returned to the United States.

Although the protest herein claims that the printing press rollers are entitled to free entry under paragraph 1615(a), *supra,* the issue has been limited by counsel to the claim that the steel cores are entitled to free entry under said paragraph as American goods returned, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad.

It is obvious that a manufacturing process was applied to the steel cores by means of which the plastic material was placed thereon. If the imported merchandise is still considered to be steel cores or printing press cores, it has been advanced in value or improved in condition and is not entitled to free entry under paragraph 1615(a), *supra.*

Plaintiff claims, however, that the imported merchandise is printing press rollers; that nothing has been done to the steel cores therein; that the identity of the cores is maintained by the identification numbers; and that they are constructively segregable from the plastic material and are, therefore, free of duty under the principle set forth in *Denike* v. *United States,* 5 Ct. Cust. Appls. 364, 365, T.D. 34553, that—

* * * merchandise imported into the country made up in part of American goods entitled to free entry and in part of goods not entitled to free entry should not be assessed for duty as entireties if the components of the importation are in fact distinct articles and so distinguished one from the other that their several dutiable quantities, weights, measures, or values may be correctly ascertained.

That case involved engine wheels, carrying tires and mounted on axles, shipped to Mexico for certain alterations to the tires. The wheels and axles were of American manufacture but the tires had been made in Germany. The court pointed out that axles, wheels, and tires are made by different factories and are not only readily separable but are as a matter of fact frequently separated either to make repairs or to substitute a new axle, wheel, or tire. It was, therefore, held that the wheels, tires, and axles were not dutiable as

entireties and that the American-made wheels and axles were free of duty.

Other articles which have been held entitled to free entry as American goods returned include American-made mountings into which foreign-made photographic lenses have been inserted; an American-made excavator returned from Canada attached by means of bolts to a Canadian-made tractor; American-manufactured marine engines returned from Canada attached to Canadian-built motorboats; an American-built truck chassis with cab attached returned from Canada after having a special body attached to the sills of the truck by six bolts; watchcases of domestic origin in which foreign-made watch movements had been cased; an American-made aircraft engine mounted in Canada in an engine mounting ring and installed in an airplane; sewing-machine motors manufactured in the United States and returned from Sweden as complete sewing machines with motors and cases; various parts of a yacht, such as marine engine, sails, steering gear, winch, hardware, and other items of American manufacture used in building and outfitting a yacht in Newfoundland. *Paramount Pictures, Inc.* v. *United States*, 6 Cust. Ct. 196, C.D. 461; *Frank H. Fenderson* v. *United States*, 32 Cust. Ct. 173, C.D. 1599; *C. J. Tower & Sons* v. *United States*, 33 Cust. Ct. 14, C.D. 1628; *Pacific Customs Brokerage Company* v. *United States*, 33 Cust. Ct. 302, Abstract 58299; *R. F. Downing & Co., Inc.* v. *United States*, 33 Cust. Ct. 303, Abstract 58230; *Import Export Service of New Jersey et al.* v. *United States*, 37 Cust. Ct. 54, C.D. 1798; *Consolidated Sewing Machine Co., Inc.* v. *United States*, 37 Cust. Ct. 314, Abstract 60179; *Donald G. Parrot* v. *United States*, 40 C.C.P.A. (Customs) 8, C.A.D. 490.

Those cases involved merchandise consisting of distinct articles, which were not only easily identifiable, but which were physically separable without injury and which performed separate functions in the imported article. They retained their individual identities in the combination, and neither became a physical entity with the other.

In *Frank H. Fenderson* v. *United States, supra,* the court said (p. 175):

The case of *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T.D. 39085, involved certain steam engines and fans, designed to be operated together for supplying forced draft to boilers of vessels, each engine and fan being complete in itself and easily and readily disconnected by merely removing the temporary bolts and coupling. The court observed that each engine is complete within itself as a steam engine, and each fan is complete within itself as a blower fan, and, in holding that the engine and the fan were separately dutiable and should not be regarded as an entirety, the court stated:

With this description of the articles before us, we conclude that the engines and fans as imported were not entireties, notwithstanding the fact that they were designed to be operated together; for when the articles are installed

for use each retains its own name and essential character, and neither one becomes in fact a part of the other. Nor do they then merge or unite so as to form together a new or distinct article having a different name or character. When in use the engine simply performs the function of an engine and retains its name as such, and the fan performs the function of a fan only and retains its separate name also.

The tractor and the excavator in question in the pending case each also retains its name and essential characteristics. Neither becomes a physical entity with the other when coupled together so as to merge or unite to form together a new or distinct article having a different name or character. * * *

On the other hand, in *Raybestos Co.* v. *United States*, 12 Ct. Cust. Appls. 332, T.D. 40484, the imported merchandise consisted of asbestos metallic yarn, composed of two fine brass wires, twisted and interwound with two spun asbestos threads. The brass wire was of American manufacture and underwent no change in the operation except the twisting. It could be removed from the asbestos yarn in its original condition except for the twisting. In the course of the opinion, the court referred to *Denike* v. *United States, supra,* and pointed out that the wheels and tires there were "in fact, distinct articles." It then held that the brass wire in the pending case was not entitled to free entry as American goods returned, stating (p. 334):

Testing this case by the rules announced in the cases cited, it appears the collector was right in assessing duty upon the article imported at the statutory rate. The American article exported came back not as brass wire but as a component part of a new commercial article, namely, metallic asbestos yarn. This new material was known by a different name, had different qualities, and was adapted for different uses.

The brass wire, if recovered by some process, would not be in its original condition, but twisted, so that it must be redrawn or straightened before again being used. It is claimed the wire has not been "advanced in value or improved in condition by any process of manufacture," and that the wire, if recovered, would be worth less than originally. The testimony shows that the union of the raw materials, brass wire and asbestos sliver, produces a product much more valuable than are these materials alone. A reasonable interpretation of the statute would be, in view of the facts, that the value of both wire and sliver had been advanced by the process of manufacture.

In the instant case, the American-made steel core is identifiable in the imported article, but it cannot be physically detached from such article except by the destruction of the plastic material nor does it perform a separate function in the article. Furthermore, the plastic material never had any existence as a distinct article to which the steel core was joined. It was produced directly upon the steel core and is permanently attached thereto. The core and the material have become an inseparable physical entity.

There is language in *C. J. Tower & Sons* v. *United States, supra,* to the effect that American goods returned in combination with foreign manufactures are entitled to free entry, so long as the American

article itself has not been advanced in value nor improved in condition and the identity thereof not lost by reason of its having been combined with foreign merchandise in such a manner that it cannot be readily identified. The actual merchandise involved in that case was a marine engine returned installed in a motorboat. There was evidence that it was an easy matter to remove an engine from a boat and that in such operation the engine as well as the boat remained intact. A witness stated that in all marine pleasure-craft industries, the warranty of a boat was separate from that of an engine, inasmuch as they were two different products. It is evident, therefore, that the combined article in that case consisted of a joining of two distinct entities which retained their individual identities, characteristics, and uses in the combination.

In our view, the exemption from duty granted to American-made articles in paragraph 1615(a), *supra*, cannot be extended to such an article when it has been returned, not as a distinct entity which has not been advanced in value or improved in condition while abroad, but as an integral part of a completely new article, into which it has been merged, and from which it cannot be separated without destroying the article.

We hold, therefore, that the printing press rollers involved herein were properly assessed with duty by the collector under paragraph 372 of the Tariff Act of 1930, as modified, as parts of printing presses. The protest is dismissed as to entry No. 16404 and as to the claim under paragraph 1615(g) and is overruled in all other respects. Judgment will be rendered accordingly.