(C.D. 3209)

UNIVERSAL FORM CLAMP CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 28, 1967)

*Schwartz & Lidstrom* (*Earl R. Lidstrom, Joseph Schwartz,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Bernard J. Babb* and *Brian S. Goldstein,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: The merchandise of this protest consists of metal frames, each with a piece of plywood attached, used as forms for

poured concrete. They were exported from Canada and entered at Chicago where they were classified as manufactures in chief value of steel, not specially provided for, dutiable at 19 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108.

Plaintiff protests that the metal frames are American goods, returned from Canada without having been advanced in value or improved in condition, free of duty under paragraph 1615(a) of the Tariff Act of 1930, as amended.

Paragraph 1615(a), as amended, provides in pertinent part as follows:

(a) Articles, the growth, produce or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means * * *.

It is stipulated that the metal frames part of the overall merchandise is an American manufacture. (R. 5.) There is no question of compliance with the conditions for free entry in part 10 of the Customs Regulations (19 CFR) as prescribed by the Secretary of the Treasury under paragraph 1615. The official papers are in evidence (collective exhibit 1). Attached are customs Form 3311 and the declaration of the foreign shipper as required by sections 10.1(a)(1) and 10.1(a)(2) of the prescribed regulations. Customs Form 4467, required by section 10.1(a)(3), was officially "waived" by red ink notations on consumption entry Form 7501, 19 CFR 3, 10.2; *J. F. Goldkamp & Co.* v. *United States*, 38 Cust. Ct. 376, C.D. 1890.

The facts are not in dispute. Exhibits 2 and 3 are illustrative of the imported merchandise. Exhibit 4 is a split rivet as it was before being inserted in the metal frame and driven into the plywood where the pronged ends flare out to hold the plywood to the frame.

Mr. Robert F. Koll, chief engineer, Universal Form Clamp Company, testified for plaintiff.

Mr. Koll testified that he has been with Universal Form Clamp Company 18 years; that, at the time of his testimony in 1965, he was in charge of engineering and field service, including product development; and that the use and construction of the metal frames were under his supervision. He had seen the imported merchandise in the storage yard after it came down from Canada and knew, from personal observation, the mechanics of attaching the plywood to the metal frame. He described how it was done as follows:

The attachment work is done in a carpenter's shop where ½-inch plywood is laid on a flat bed with a steel top. An inverted frame is clamped over the plywood, and the carpenter drives the rivets through

holes in the back side of the frame. As the rivet comes through the plywood and strikes the steel, the end of the rivet flares and holds the plywood to the frame. When the plywood becomes worn, usually after about one year, it is removed from the frame. This is done by pulling the rivets, using a pair of blacksmiths' tongs or a specially ground claw hammer. The plywood, if not too worn, is generally used over again on the reverse side. The old rivet holes are plugged with wood putty and the rivets driven through the plywood at a new position. On average, a metal frame has a useful life of about 15 years. It does not change nor is its condition altered when the plywood is removed.

On cross-examination, Mr. Koll testified that the metal frames were originally shipped to Canada to be used there by plaintiff's affiliated company. They were returned to the United States with the plywood attached when the Canadian plant closed down. The metal frames which vary in size are basically rectangular with crosspieces at one foot centers. Each crosspiece has three holes and each hole receives a rivet. The larger imported frame, said Mr. Koll, was "2 foot by 6 foot," and would take about 30 rivets. The plywood is cut to size to fit the size frame. Mr. Koll further testified that, when used as forms for poured concrete, the forms are placed opposite each other with the plywood facing in so that the concrete settles against the plywood.

Both sides have filed briefs discussing the facts in the framework of agreed legal precedents. Plaintiff argues that the plywood aside, the metal frames are free of duty under paragraph 1615(a) because, while the metal frames were joined in Canada with a piece of plywood attached by rivets, this did not advance the value or improve the condition of the identifiable American frames, citing *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 45 Cust. Ct. 59, C.D. 2198. In the *Tower* case, this division of the court reviewed a number of cases, starting with *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, T.D. 34553, and stated (pp. 61, 62):

That case [Denike] involved engine wheels, carrying tires and mounted on axles, shipped to Mexico for certain alterations to the tires. The wheels and axles were of American manufacture but the tires had been made in Germany. The court pointed out that axles, wheels, and tires are made by different factories and are not only readily separable but are as a matter of fact frequently separated either to make repairs or to substitute a new axle, wheel, or tire. It was, therefore, held that the wheels, tires, and axles were not dutiable as entireties and that the American-made wheels and axles were free of duty.

Other articles which have been held entitled to free entry as American goods returned include American-made mountings into which foreign-made photographic lenses have been inserted; an American-made excavator returned from Canada attached by means of bolts to a Canadian-made tractor; American-manufactured marine engines returned from Canada attached to Canadian-built motorboats; an Amer-

ican-built truck chassis with cab attached returned from Canada after having a special body attached to the sills of the truck by six bolts; watchcases of domestic origin in which foreign-made watch movements had been cased; an American-made aircraft engine mounted in Canada in an engine mounting ring and installed in an airplane; sewing-machine motors manufactured in the United States and returned from Sweden as complete sewing machines with motors and cases; various parts of a yacht, such as marine engine, sails, steering gear, winch, hardware, and other items of American manufacture used in building and outfitting a yacht in Newfoundland. *Paramount Pictures, Inc.* v. *United States,* 6 Cust. Ct. 196, C.D. 461; *Frank H. Fenderson* v. *United States,* 32 Cust. Ct. 173, C.D. 1599; *C. J. Tower & Sons* v. *United States,* 33 Cust. Ct. 14, C.D. 1628; *Pacific Customs Brokerage Company* v. *United States,* 33 Cust. Ct. 302, Abstract 58299; *R. F. Downing & Co., Inc.* v. *United States,* 33 Cust. Ct. 303, Abstract 58230; *Import Export Service of New Jersey et al.* v. *United States,* 37 Cust. Ct. 54, C.D. 1798; *Consolidated Sewing Machine Co., Inc.* v. *United States,* 37 Cust. Ct. 314, Abstract 60179; *Donald G. Parrot* v. *United States,* 40 C.C.P.A. (Customs) 8, C.A.D. 490.

Those cases involved merchandise consisting of distinct articles, which were not only easily identifiable, but which were physically separable without injury and which performed separate functions in the imported article. They retained their individual identities in the combination, and neither became a physical entity with the other.

The merchandise in *Tower* was printing press rollers, consisting of American-made steel cores covered in Canada with a resilient vinyl material, assessed under paragraph 372 as parts of printing presses. *Tower* claimed the steel cores were free of duty under paragraph 1615. This court, on the basis of the cases reviewed in the above quote, overruled the *Tower* protest claim, stating (pp. 63–64):

In the instant case [*Tower*], the American-made steel core is identifiable in the imported article, but it cannot be physically detached from such article except by the destruction of the plastic material nor does it perform a separate function in the article. Furthermore, the plastic material never had any existence as a distinct article to which the steel core was joined. It was produced directly upon the steel core and is permanently attached thereto. The core and the material have become an inseparable physical entity.

\* \* \* \* \* \* \*

In our view, the exemption from duty granted to American-made articles in paragraph 1615(a), *supra,* cannot be extended to such an article when it has been returned, not as a distinct entity which has not been advanced in value or improved in condition while abroad, but as an integral part of a completely new article, into which it has been merged, and from which it cannot be separated without destroying the article.

Defendant acknowledges the validity of the *Tower* case and the precedents cited in *Tower.* Indeed, defendant cites *Tower* to support

its argument that the American-made frames have no useful function without the plywood and that both, frames and plywood, have merged into a new commercial entity, dutiable as an entirety when imported.

The *Tower* case, as do all cases involving the question of so-called entireties, stands on its own facts for, in truth, whether or not joined articles constitute an entirety for tariff purposes is not difficult to argue either way. But as our court of appeals recently stated:

Mere juxtaposition at importation or in trade does not preclude further analysis. The difficulty is in the selection of appropriate standards for that analysis. It is suggested that the dispositive consideration is whether the identity of the individual components has been submerged. However, it seems to us that where the design of the combination in issue by its very nature contemplates its disassembly and the utilization of the constituents in the very manner for which they are otherwise used and when articles very similar to those constituents are on sale as separate items, the combination is not, in the sense of the customs law, an entirety. To hold otherwise would only facilitate subversion of the congressional intent. The doctrine of entireties, as we have recently pointed out, may never be so used. * * * [*United States* v. *Altray Company*, 54 CCPA 107, C.A.D. 919.]

The facts here are that the useful life of the metal frame is 15 years, that of the plywood one year or two at most. This means that the frame will continue to be used long after the discard of the old plywood. New plywood will be attached. To say that the plywood will be of no use and discarded when removed from the frame merely emphasizes that the metal frame does have an identity separate from the whole for, when the whole is disassembled, the metal frame will be again utilized in the very manner intended when made. We hold that these metal frames have not merged into a new article by joining with plywood, and that they are free of duty under paragraph 1615 (a), as American goods returned, without having been advanced in value or improved in condition.

The official papers show that the metal frames with plywood attached were appraised and liquidated as a single entity. Since, as we have held, the metal frames are free of duty under paragraph 1615 (a), their appraisement and liquidation as an entirety with the dutiable plywood is invalid and void. *Consolidated Sewing Machine Co., Inc.* v. *United States*, 37 Cust. Ct. 314, Abstract 60179.

The protest is sustained. The case will be remanded to a single judge to determine the proper dutiable values in the manner provided by law, 28 U.S.C., section 2636 (d).

Judgment will be entered accordingly.